IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALBERT SINGLETON,               :
                    Plaintiff,  :        1:17-cv-1027
                                :
        v.                      :        Hon. John E. Jones III
                                :
CORRECTIONAL OFFICER            :
SHEARER, JR., *et al.*,         :
                    Defendants. :

## <u>MEMORANDUM</u>

### July 25, 2019

Plaintiff, Albert Singleton ("Singleton"), a state inmate, filed the instant

action pursuant to 42 U.S.C. § 1983, on June 12, 2017, alleging that he was

transferred from the State Correctional Institution at Rockview ("SCI-Rockview")

to the State Correctional Institution at Smithfield ("SCI-Smithfield") in retaliation

for filing a Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15602, complaint

against Defendant Shearer.  (Doc. 1).  The matter is proceeding *via* an amended

complaint (Doc. 24) which names Corrections Officer Shearer, Jr. ("Shearer"),

Corrections Officer Miller ("Miller"), and Hearing Examiner T. Pilosi, now known

as Trisha Walter ("Walter"), as Defendants.  (Doc. 95, n.4).  Included in the

amended complaint are First, Sixth, Eighth and Fourteenth Amendment claims, a

civil rights conspiracy claim, and state law claims.  (Doc. 24).

Pending is Defendants' motion (Doc. 93) for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court will grant the motion for summary judgment.

## I.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's claims." *Id.* at 325.

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own

pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

## II.   STATEMENT OF MATERIAL FACTS

### A.   PREA Incidents

On December 27, 2016, Singleton verbally reported to PREA Investigating Lieutenant Eric Selfridge ("Selfridge"), incidents of sexual harassment by Defendant Shearer that occurred on December 22, 2016. (Doc. 95, ¶ 1). Selfridge

4

interviewed Singleton on December 29, 2016, and Singleton submitted a written statement identifying two separate incidents of sexual abuse and harassment. (*Id.* at 2). Singleton reported that, while walking up the stairs, Shearer allegedly stuck his hand through the bottom of the stairs and touched his foot. (Doc. 93-3, Declaration of Selfridge ("Selfridge Decl."), ¶ 9). The second incident occurred later that evening. (*Id.* at 10). Specifically, Singleton reported that Shearer approached him on A-Unit 4 range and made inappropriate comments. (*Id.*).

After reviewing camera footage of the stairwell, Selfridge concluded that the allegation was inconclusive and would not be investigated further. (*Id.* at 11). Seflridge made Singleton aware of this conclusion during the interview. (*Id.* at 12). Following review of the camera footage of the A-Unit 4 range incident, which depicted Shearer having a conversation with Singleton, Selfridge launched an investigation into the allegation of sexual harassment. (*Id.* at 13). Singleton did not have any witnesses. (*Id.* at 14). He did, however, indicate that he reported the A-Unit 4 range incident to Lieutenant Monoskey ("Monoskey") on December 23, 2016, while they were in the yard. (Doc. 93-3, Selfridge Decl., ¶17). Because there was no allegation of physical contact, Shearer remained on Singleton's housing unit during the investigation. (*Id.* at 15).

Selfridge limited disclosure of Singleton's complaints to his designated supervisors and individuals necessary to assist in investigating the claims. (*Id.* at 16). He interviewed Monoskey on December 29, 2016, who confirmed that

Singleton did approach him but did not provide specific details; Monoskey advised Singleton to contact Selfridge. (*Id.* at 18). Selfridge was unable to interview Defendant Shearer until January 23, 2017. (*Id.* at 25). When interviewed, Shearer stated that at the time of the incident he was assigned to A-Unit on December 22, 2016. He admitted to having a conversation with Singleton about what Singleton was doing on the 4 range when he lived on 5 range. (*Id.* at 26). Shearer stated that at no time did he say anything inappropriate to Singleton. (*Id.*)

On February 17, 2017, Selfridge notified Singleton that his allegation of sexual harassment was unsubstantiated due to insufficient evidence to prove his version of events. (*Id.* at 28).

Defendant Shearer did not become aware of the PREA complaint against him until the January 23, 2017 interview with Selfridge. (Doc. 93-3, Selfridge Decl., ¶ 25). Defendants Miller and Walter were not aware that Singleton filed a PREA complaint until they read his complaint. (Doc. 93-8, Declaration of Officer Zachary Miller ("Miller Decl.") ¶ 5; Doc. 93-9, Declaration of Trisha (Pilosi) Walter ("Walter Decl.") ¶ 16).

### B.     January 2, 2017 Assault

Singleton alleges that upon returning to his cell on January 2, 2017, unknown inmates attacked him and left him bleeding on his cell floor. (Doc. 24, ¶¶ 36, 38). Allegedly, one of the inmates stated "Don't kill him, Shearer just said f--- him up." (*Id.* at 37). He alleges that he saw the silhouette of a corrections

officer during the assault who stated "don't tell…take it like a man." (*Id.* at 38).

He now contends, that witnesses are "clearly willing to testify that Defendant

Shearer was the officer who stood by and watched several inmates assault

[him]…." (*Id.*). Singleton did not report to prison officials that he was assaulted

in his cell on January 2, 2017. (Doc. 95, ¶ 7). Nor did he seek medical attention

for his alleged injuries. (*Id.*).

### C.    January 17, 2017 Misconduct

Singleton alleges that on January 16, 2017, Corrections Officer Defendant

Miller threatened him stating " 'that this is a prison and [you] would need Officer

Shearer one day, and if [I] was [you] ("plaintiff") [I] would just drop it' (indicating

the PREA complaint filed against Defendant Shearer Jr.)." (Doc. 24, ¶ 40).

"Defendant Miller then stated with antipathy 'it's not over [Singleton]… you are a

f------ snitch.'." (*Id.* at 41). Defendant Miller declares "I do not recall speak[ing]

to Albert Singleton on the night of January 16, 2017, but I never stated that

Singleton needed to drop any complaint he may have had with Officer Shearer."

(Doc. 93-8, Miller Decl., ¶ 4). He further states that he was not aware that

Singleton filed a PREA complaint against Officer Shearer until he received the

complaint filed in this matter. (*Id.* at 5).

On January 17, 2017, Defendant Miller issued Singleton Misconduct

Number C004264, for engaging in, or encouraging unauthorized group activity.

Doc. 93-9, p. 8). The misconduct report states "[o]n January 17, 2017, I CO1

Miller was assigned to the front door where I was signing up inmates for phone calls on January 18, 2017.  While performing my duties I witnessed inmate Singleton JX8989 encouraging and pressuring other inmates to not sign up for phone times during block out." (*Id.*). The misconduct report did not contain the main details of the disturbance because all staff reports were combined to create an Extraordinary Occurrences Report.  (*Id.*, Miller Decl., ¶16).  The report described the events as follows[1]:

> On 17 January 2017 at 1840 inmate [ ] attempted to utilize the inmate telephone without being signed up or requesting permission.  [ ] ordered the inmate to hang up the phone and exit the area.  Inmate [ ] refused the order.  After several additional orders and the inmate refusing to hang up the phone, inmate [ ] was ordered to turn around to be restrained.  Inmate [ ] refused to comply.  [ ] grasped the wrist of the inmate to maintain control while restraining the inmate, simultaneously while attempting to restrain the inmate several other inmates gathered in the phone area cornering [ ] and [ ] in the corner.  [ ] made a radio transmission requesting assistance in A Block for an inmate disturbance.  Numerous officers responded to the Block.  Upon arrival at the Housing unit, it was discovered that there were approximately 90-120 inmates congregated around the front door of the housing unit, the office, the front of the blockout area, and the back blockout area. The responding officers began forming a perimeter near the phone area in an attempt to maintain control of the situation.  [ ] arrived and took charge of the situation in an attempt to defuse the situation.  Additional staff continued to arrive and assist in crowd control.  [ ] began speaking with roughly 15-20 inmates in an attempt to resolve the issue.  [ ] arrived and began speaking with other inmates in an attempt to resolve the issue.  After speaking with a smaller group of inmates [ ] were able to defuse the situation without incident.  The crowd of inmates returned to the blockout area to resume blockout.  [ ] removed inmate [ ] from

---

[1] Names of inmates and staff, other than Singleton and Defendant Miller, are redacted in the exhibit provided to the Court; brackets signal where names are redacted.  (Doc. 93-8, p. 7).

the housing unit, escorted him to the DRHU, where he was inprocessed and placed in his cell without incident. [ ] determined after speaking with the inmates and several moments of observing the mood of the housing unit, made the determination not to terminate blockout and lock the block down at that time, believing that by doing so may cause a major disturbance. [ ] assigned additional staff to remain on the housing unit until blockout was terminated at 2045 and the inmates were returned to their cells for count. After reviewing video footage, several inmates were identified as actively being involved with the disturbance. Inmates [ ], Singleton JX8989, and [ ] were identified as the leaders of the disturbance, received a misconduct, and were placed in pre hearing confinement. While inprocessing inmate [ ] into the DRHU, [ ] discovered a broken piece of lexan measuring 3 ¾"in length with a sharp point on one end in the front pocket of inmate [ ] jacket. [ ] turned the weapon over to [ ] and continued the inprocessing. Command notifications were made, PSP was notified. On 1/18/17 the Security Department identified additional inmates as being involved and were placed in the DRHU under DC-ADM 802 1, B, 1.f.

(Doc. 93-8, p. 7).

Singleton received a copy of the misconduct charge on January 17, 2017. (Doc. 93-9, p. 8). He also received forms to request witnesses and representation and provide his written version of events. (*Id.*) He did not provide a list of witnesses that he would like to call in advance of the hearing. (Doc. 93-9, Walter Decl. ¶ 6).

Hearing Examiner Defendant Walter held the misconduct hearing on January 23, 2017. (Doc. 24, ¶ 10). Singleton did not request any witnesses during the hearing. (Doc. 93-9, Walter Decl. ¶ 6). Singleton stated at the hearing "I plead guilty because the charge fits the circumstances. I understand that repeating what Captain Sutton said may have appeared to Officer Miller that I was encouraging

people not to sign up for the phone." (Doc. 93-9, p. 9). Defendant Walter continued the hearing to speak with Captain Sutton. (*Id.*). "Captain Sutton was sworn in and stated that he spoke to many people that day and could not remember what he specifically said to inmate Singleton." (*Id.*). Defendant Walter reviewed the video footage of the incident, reviewed Singleton's version of events, and interviewed Captain Sutton. (Doc. 93-9, Walter Decl. ¶ 5). On January 25, 2017, Defendant Walter issued a disciplinary hearing report wherein she accepted Singleton's guilty plea and sanctioned him with ninety days of disciplinary custody time. (Doc. 24, ¶ 11; Doc. 93-9, p. 9).

Singleton appealed. (Doc. 24, ¶ 12). Defendant Walter's decision was upheld based on Singleton's plea of guilty to the charge and because the sanction was proportionate to the offense. (Doc. 24, ¶ 12; Doc. 93-9, pp. 17, 18). It was also noted that "multiple inmates were interviewed as a result of this incident. The misconduct charge shows you encouraging other inmates not to sign up for the phone. No leniency is warranted in this instance." (Doc. 93-9, p. 17). At the final level of appeal, the Chief Hearing Examiner noted as follows: "The record reveals you pled guilty at your misconduct hearing. In accordance with DC-ADM 801, you may only appeal that the evidence is contrary to law, policy or regulations or that the sanction is disproportionate to the offense. For the above-stated reasons I conclude the issues raised for review, do not, as a matter of law, require further action on this misconduct. Your appeal must therefore be denied." (*Id.* at 18).

**D.    Transfer to SCI-Smithfield**

On January 26, 2017, prison officials transferred Singleton from SCI-Rockview to SCI-Smithfield due to his involvement in the housing unit disturbance.  (*Id.* at 14; Doc. 93-9, p. 16).  Decisions to transfer an inmate are made by the Office of Population Management and the facility manager.  (Doc. 93-8, Miller Decl., ¶ 23).

**III.    DISCUSSION**

**A.    Constitutional Claims**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

1.     First Amendment Retaliation Claim

The First Amendment offers protection for a wide variety of expressive activities.  *See* U.S. Const. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).  Prison officials may be held liable for retaliatory conduct that was motivated "'in substantial part by a desire to punish [the prisoner] for exercise of a constitutional right,'" *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000) (citation omitted), such as filing lawsuits and grievances related to the conditions of incarceration. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). To succeed on his retaliation claim, Singleton must demonstrate that he was engaged in constitutionally protected conduct, that prison officials caused him to suffer "adverse action," and that there is a causal connection between the exercise of his constitutional rights and the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). With respect to the third element, "once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.  This is a "deferential standard" meant to take into account "that the task of prison administration is difficult, and that courts should

afford deference to decisions made by prison officials, who possess the necessary expertise." *Id.*

The filing of a PREA complaint against a corrections officer is an activity protected by the First Amendment. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (*citing Mitchell*, 318 F.3d at 530); s*ee also Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981) (finding retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). Singleton clearly meets the constitutionally protected conduct prong.

Once it is determined that the inmate was engaged in constitutionally protected conduct, he must show that he was subject to adverse action. To satisfy this prong, a plaintiff must demonstrate that he suffered "adverse" action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah*, 229 F.3d at 225; *see also Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012). Singleton first alleges that, on or about January 2, 2017, just days after he filed his PREA complaint, an unidentified inmate assaulted him at the direction of Defendant Shearer. Although he indicates in his supporting brief that there are "witnesses who are clearly willing to testify that Defendant Shearer was the officer who stood by and watched several inmates assault plaintiff when Shearer could have intervened which would have proved that Shearer was innocent," he fails to produce witness declarations or statements of these witnesses. (Doc. 101, p. 3). Because we are at the summary judgment phase of the litigation,

Singleton is required to come forward with "more than a mere scintilla of evidence" of this assault; he cannot simply rely on unsupported assertions, conclusory allegations, or mere suspicions. *William*, 891 F.2d at 460. Singleton does not come forward with any evidence that substantiates this alleged adverse action. However, he also contends that the issuance of the misconduct and the transfer from SCI-Rockview to a highly restrictive housing unit at SCI-Smithfield constitute adverse action. (Doc. 34, ¶¶ 70, 71). The issuance of a retaliatory misconduct and transfer from one institution to another has been found to be sufficiently adverse for purposes of a retaliation claim. *See Rauser*, 241 F.3d at 333–342. Singleton clearly meets the adverse action prong.

Next, the Court must determine whether there is a causal connection between the exercise of the constitutional right and the adverse action. The plaintiff must show that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. While causation can be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." *Watson*, 834 F.3d at 422. Motivation may be shown by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.* " '[T]he timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred.' " *Id.* at 424 (quoting *Estate of Smith*

*v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)). "[C]ausation, like any other fact, can be established from the evidence gleaned from the record as a whole." *Id.* (citing *Farrell v. Planters Liefesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) ). When showing causation through unusually suggestive timing, the contemplated temporal proximity must be "on the order of days or weeks." *Rink v. Northeastern Educ. Intermediate Unit*, 717 F. App'x 126, 134 (3d Cir. 2017) (citations omitted). "[W]here the temporal proximity is not so close as to be 'unduly suggestive,' the appropriate test is 'timing plus other evidence.' " *Watson*, 834 F.3d at 424 (quoting *Farrell*, 206 F.3d at 280).

Singleton alleges that the day after he called Singleton a snitch and suggested that he drop the PREA complaint against Defendant Shearer, Defendant Miller issued him a "false behavior report." (Doc. 24, ¶¶ 40, 41, 45). Defendants offer the declaration of Defendant Miller wherein he denies he made any such threat and also states that he had no knowledge of the PREA complaint Singleton filed against Shearer. Although Singleton fails to counter this declaration and simply relies on the conclusory and unsupported allegations of the complaint, the temporal proximity between the filing of the PREA complaint on December 27, 2017, and the issuance of the misconduct on January 17, 2017, is sufficient to establish a causal link. Also, Defendants concede the temporal proximity between the issuance of the misconduct and the transfer acknowledging that "[a] clearer connection is found in the fact that it was only nine days between the dates in

which Plaintiff was cited for a serious misconduct, sentenced to disciplinary custody, and transferred to SCI-Smithfield." (Doc. 94, pp. 18-20). Singleton has satisfied the third prong.

If the prisoner establishes a *prima facie* case of retaliation, as is the case here, the burden then shifts to prison officials to show by a preponderance of the evidence that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. In conducting this analysis, the Court must bear in mind that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. *Id.*

When "evaluating the legitimacy of a misconduct report, [the Court] considers 'the quantum of evidence of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion [the Court] must afford them.' " *Williams v. Folino*, 664 F. App'x. 114, 148-149 (3d Cir. 2016) (not precedential) (quoting *Watson*, 834 F.3d at 426). Where the prisoner is found guilty of the charges in a purportedly retaliatory misconduct report after a disciplinary hearing, the finding of guilt is considered strong evidence that the misconduct report was issued for a legitimate penological reason. *See Nifas v. Beard*, 374 F. App'x. 241, 244 (3d Cir. 2010) (not precedential); *Romansky v. Stickman*, 147 F. App'x. 310, 312 (3d Cir.

16

2005) (not precedential). A finding of guilt on a misconduct charge, combined with "a meaningful written statement of the evidence relied on and the reasons for the action taken," establishes a "quantum of evidence" of misconduct sufficient to warrant summary judgment. *Williams*, 664 F.App'x. 144, 148-49 (*quoting Watson*, 834 F.3d at 426; *Dyson v. Kocik*, 689 F.2d 466, 467 (3d Cir. 1982)).

Defendants argue that they would have taken the same actions to address Singleton's involvement in the inmate disturbance absent the filing of the PREA complaint. (Doc. 94, pp. 18-20). On January 17, 2017, Singleton, along with several other inmates, orchestrated an inmate disturbance involving 90 to 120 inmates. As a result, Singleton received Misconduct Number C004264, for engaging in, or encouraging unauthorized group activity. At the disciplinary hearing, Singleton offered an inmate statement during which he admitted to the charges and expressed his willingness to plead guilty. Specifically, he stated "I plead guilty because the charge fits the circumstances. I understand that repeating what Captain Sutton said may have appeared to Officer Miller that I was encouraging people not to sign up for the phone." (Doc. 93-9, p. 9). Defendant Walter did not immediately accept the guilty plea. Instead, she continued the hearing to enable her to seek testimony from Captain Sutton. Defendant Walter reviewed the video footage of the incident, reviewed Singleton's version of events, and interviewed Captain Sutton. (Doc. 93-9, Walter Decl. ¶ 5). Thereafter, Defendant Walter accepted Singleton's guilty plea and imposed a sanction of

ninety days disciplinary confinement. The decision was upheld through all levels of appeal. In addition, the record indicates that the transfer from SCI-Rockview was a direct result of his involvement in the housing unit disturbance. Defendants have satisfied their burden in that they have come forward with a sufficient quantum of evidence of misconduct to demonstrate that the discipline imposed and the resulting transfer from SCI-Rockview were reasonably related to a legitimate penological interest and that Singleton would have been disciplined regardless of the filing of a his PREA complaint. *See, e.g., Rivera v. McCoy*, 729 F. App'x 142, 145 (3d Cir. 2018). Defendants are entitled to an entry of summary judgment on the retaliation claim.

 2. <u>Eighth and Fourteenth Amendment Claims</u>

 a. *Due Process Claims*

Singleton argues that Defendant Walter violated his Sixth Amendment rights by refusing to allow him to obtain witnesses in his favor. As noted by Defendants, this claim is properly a Fourteenth Amendment claim, not a Sixth Amendment claim, and will be construed as such.

To the extent that Singleton alleges that Defendant Walter violated his due process rights in connection with his disciplinary hearing he is not entitled to relief. It is well-settled that prisoners are entitled to due process protection only when the disciplinary action results in the loss of good conduct time. *Muhammed v. Close*, 540 U.S. 749 (2004); *Edwards v. Balisok*, 520 U.S. 641 (1997). Even if he experienced the

loss of good conduct time, he would not be entitled to relief as such a claim is barred by the favorable termination rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence), and extended to prison disciplinary proceedings in *Edwards*.

The Court also notes that Singleton was not deprived of a legally cognizable liberty interest. A prisoner can identify a cognizable liberty interest if a punishment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "In deciding whether a protected liberty interest exists[,] ... we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003). Singleton has not identified a protected liberty interest. He does not allege the conditions of his 90-day confinement in disciplinary custody involved an atypical and significant hardship. Significantly longer stays in restrictive confinement did not implicate a prisoner's liberty interests under otherwise similar circumstances. *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (concluding that seven months in disciplinary confinement alone did not violate a prisoner's liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (same for fifteen months in

administrative custody).  Defendant Walter is entitled to an entry of summary judgment on Singleton's Fourteenth Amendment due process claim.

### b.    *Failure to Intervene claim*

Singleton also alleges that Defendant Shearer failed to intervene in the January 2, 2017 assault in violation of the Eighth Amendment. "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation marks omitted).  As such, the Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials "a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (quotation marks omitted); *see also Beers–Capitol v. Whetzel*, 256 F.3d 120, 130–33 (3d Cir. 2001); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997).  Singleton argues "[i]t is clear from the witnesses who are clearly willing to testify the Defendant Shearer was the officer who stood by and watched several inmates assault plaintiff when Shearer could have intervened which would have proved that Shearer was innocent." (Doc. 101, p. 3).  As noted *supra*, the record is devoid of any evidence of a January 2, 2017 assault on Singleton by other inmates.  Singleton did not report an assault, did not seek medical treatment, failed to file a grievance, and does not submit declarations from witness "who are clearly willing to testify." (*Id.*).  The party adverse to summary judgment must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying

on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Singleton has failed to meet this burden. Consequently, Defendant Shearer is entitled to summary judgment on the Eighth Amendment claim.

### 3. Civil Rights Conspiracy

"In order to prevail on a conspiracy claim under Section 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." *Watson v. Sec'y Pa. Dept. of Corr.*, 436 F.App'x. 131, 137 (3d Cir. 2011) (internal quotation marks omitted). A plaintiff must plead an actual agreement between the parties. (*Id.*). Because the "linchpin for conspiracy is agreement, concerted action without more cannot suffice to state a conspiracy claim." (*Id.*). A plaintiff must provide "specific allegations of 'combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the challenged conduct." *Marchese v. Umstead*, 110 F.Supp.2d 361, 371 (E.D.Pa. 2000); *see also Wood v. Williams*, 568 F. App'x 100, 107 (3d Cir. 2014) (not precedential).

In his opposition brief Singleton simply states that his "complaint clearly proves that each defendant wanted the same result and that is to deter Plaintiff from moving forward with the PREA report and the filing of the grievance." (Doc. 101, p. 4). Such conclusory allegations do not meet the stringent specificity requirements of a plan or agreement among all or between any of the defendants to

plot, plan or conspire to carry out the challenged conduct of deterring him from

pursing his PREA complaint. Further, it is undisputed that Defendant Shearer did

not become aware of the PREA complaint against him until January 23, 2017, after

the issuance of the misconduct and just three days prior to his transfer from SCI-

Rockview and that Defendants Miller and Walter were not aware that Singleton

filed a PREA complaint until they read the federal complaint, which was filed in

this Court on June 12, 2017.

### B.    State Law Claims

Whether to exercise supplemental jurisdiction is within the discretion of the

court. Section 28 U.S.C. § 1367(c)(3) provides that district courts may decline to

exercise supplemental jurisdiction over a state law claim if the district court has

dismissed all claims over which it has original jurisdiction. When deciding whether

to exercise supplemental jurisdiction, "a federal court should consider and weigh in

each case, and at every stage of the litigation, the values of judicial economy,

convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522

U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350

(1988). "[W]here the claim over which the district court has original jurisdiction

is dismissed before trial, the district court must decline to decide the pendent state

claims unless considerations of judicial economy, convenience, and fairness to the

parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204

F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45

F.3d 780, 788 (3d Cir. 1995)).  Following thorough considerations of judicial economy, convenience, and fairness, the Court declines to exercise supplemental jurisdiction over Singleton's state law claims.

## III.  <u>CONCLUSION</u>

Based on the foregoing, the Court will grant Defendants' motion (Doc. 93) for summary judgment.

An appropriate Order will issue.